**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

**WORLD OF BEER FRANCHISING, INC.**, a Florida corporation,

Plaintiff,

v.

**MWB DEVELOPMENT I, LLC**, a Virginia limited liability company; **MWB DEVELOPMENT II, LLC**, a Virginia limited liability company; **MWB DEVELOPMENT III, LLC**, a Virginia limited liability company; **CRAFTHOUSE LLC**, a Virginia limited liability company; and **EVAN S. MATZ**, an individual,

Defendants.

Case No.

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff World of Beer Franchising, Inc. ("**WOBF**") sues Defendants MWB Development I, LLC ("**MWB I**"), MWB Development II, LLC ("**MWB II**"), MWB Development III, LLC ("**MWB III**"), CraftHouse LLC ("**CraftHouse**"), and Evan S. Matz ("**Matz**"), and alleges:

**Parties, Jurisdiction, and Venue**

1. Plaintiff WOBF is a Florida corporation with its principal place of business in Hillsborough County, Florida.

2. Defendant MWB I is a Virginia limited liability company with its principal place of business in Fairfax County, Florida.

3. Defendant MWB II is a Virginia limited liability company with its principal place of business in Fairfax County, Virginia.

4. Defendant MWB III is a Virginia limited liability company with its principal place of business in Fairfax County, Virginia.

5. Defendant CraftHouse is a Florida limited liability company with its principal place of business in Palm Beach County, Florida.

6. Defendant Matz is an individual residing in Palm Beach County, Florida.

7. Defendants are subject to the jurisdiction of this Court.

8. Subject matter jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121. The Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and Paragraph 22.8 of the parties' franchise agreements. Under the franchise agreements, the parties agreed to arbitrate most disputes but are permitted to seek interim injunctive relief and other relief related to the use of Plaintiff's marks. Accordingly, contemporaneously with filing this suit, WOBF will initiate an arbitration proceeding against Defendants for the claims subject to the arbitration provision.

**The World of Beer Franchise System**

10. WOBF is a franchisor of retail alcohol establishments that feature and sell imported and domestic beers, tavern fare, and other authorized products in a distinctive pub environment.

11. WOBF has developed methods and procedures—a system—used in the operation of World of Beer® franchises (the "**System**"). The System is the culmination of WOBF's experience and investment and is meant to ensure the successful operation of World of Beer® establishments.

12. Through its franchise agreements, WOBF licenses the use of the System and its trademarks and trade dress, and requires its franchisees to operate uniformly and in accordance with WOBF's specifications to protect the World of Beer® image and brand.

13. In exchange for the right to use WOBF's marks and trade dress and to further protect the World of Beer® image and brand, World of Beer® franchisees are, for a limited time, prohibited from operating a competing business, within a specific geographic range, after expiration or termination of their franchise agreements.

**The Parties' Franchise Relationship**

14. On February 14, 2012, MWB I, and WOBF entered a franchise agreement for a World of Beer® establishment located at 901 North Glebe Road, # 105, Arlington, Virginia 22203 (the "**Arlington Franchise Agreement**"). A copy of the Arlington Franchise Agreement is attached as Exhibit A.

15. Contemporaneously, Matz executed a Principal Owner's Guaranty, guaranteeing MWB I's payment and performance under the Arlington Franchise Agreement (the "**Arlington Guaranty**"). A copy of the Arlington Guaranty is attached as Exhibit B.

16. On July 27, 2015, MWB II and WOBF entered a franchise agreement for a World of Beer® establishment located at 11861 Palace Way, Fairfax, Virginia 22030 (the "**Fairfax Franchise Agreement**"). The Fairfax Franchise Agreement is attached as Exhibit C.

17. Contemporaneously, Matz executed a Principal Owner's Guaranty, guaranteeing MWB II's payment and performance under the Fairfax Franchise Agreement (the "**Fairfax Guaranty**"). A copy of the Fairfax Guaranty is attached as Exhibit D.

18. On November 18, 2013, MWB III and WOBF entered a franchise agreement for a World of Beer® establishment, which at the time, was located at The Avant at Reston Town

Center, 12025 Town Square Street, Reston, Virginia 20190 (the "**Reston Franchise Agreement**"). A copy of the Reston Franchise Agreement is attached as Exhibit E. The tavern was later located at 1888 Explorer Street, Reston, Virginia, 20190.

19. Contemporaneously, Matz executed a Principal Owner's Guaranty, guaranteeing MWB III's payment and performance under the Reston Franchise Agreement (the "**Reston Guaranty**"). A copy of the Reston Guaranty is attached as Exhibit F.

**Defendants Breach the Franchise Agreements**

20. Since their respective openings, Defendants' franchises grew to become among the most successful and highest revenue-grossing taverns within the World of Beer® system.

21. Despite their success as World of Beer® franchisees, in recent months, Defendants have displayed an utter disregard for their obligations under the franchise agreements.

22. Over the course of 2016, for example, Defendants failed and refused to "acquire all services, supplies, materials, ingredients, food and beverage products . . . for use in connection with [their] WOB Tavern(s) (collectively, the "**WOB Tavern Materials**") . . . from suppliers [WOBF] previously approved" as required by Section 5.4 of the franchise agreements.

23. In breach of this contractual provision, Defendants entered into an agreement with a supplier that was not approved by WOBF. Matz admitted to WOBF's management that Defendants were purchasing the vast majority of the WOB Tavern Materials outside of WOBF's approved supplier network.

24. WOBF requested several times that Defendants comply with Section 5.4 of the franchise agreements. Defendants plainly refused. As a result, WOBF served Defendants with a

formal notice of default on January 9, 2017. A copy of the notice of default is attached hereto as Exhibit G.

25. In response, Matz informed WOBF that he "can not [sic] comply with you [sic] demand and will be forced to accept your default letter." See Exhibit H. Thereafter, he offered three options: mediation, exiting the World of Beer® System, or allowing WOBF to purchase his taverns.

26. On January 20, 2017, WOBF's counsel notified Defendants that it was willing to participate in mediation, and it would not permit Defendants to exit the WOBF system before the expiration of their franchise agreements unless Defendants agreed to convert their taverns to non-competing restaurants and compensate WOBF for the revenue WOBF would have received had Defendants operated their franchises for the duration of the term provided in their franchise agreements. WOBF further advised that it was interested in purchasing the taverns, but only on reasonable terms and conditions. See Exhibit I.

27. Defendants did not respond. On February 6, 2017, WOBF warned Defendants that the time to cure their defaults would expire the following day, February 7, 2017. WOBF invited Defendants to provide a factual basis of compliance and further informed Defendants that if they failed to timely cure, then WOBF would deem their franchises terminated at the close of business on February 8, 2017. After that point in time, WOBF advised Defendants, WOBF would discuss with Defendants the valuation of their taverns. See Exhibit J.

28. Defendants counsel responded the following day, on February 7, 2017, arguing that Defendants could purchase from non-approved suppliers under the franchise agreement, but otherwise supplying nothing to support that contention. Defendants' counsel further suggested

that the parties would agree to a voluntary, consensual termination, but requested 90 days for Defendants to debrand.

29. Because Defendants failed to cure their defaults, Defendants' franchise agreements were terminated at the close of business on February 8, 2017. WOBF never consented to Defendants' proposal to debrand, and the parties never reached an agreement to amend Defendants' post-termination obligations under the franchise agreement.[1]

30. Defendants did not respond to WOBF's proposal. Rather, unbeknownst to WOBF, Defendants were working to open competing businesses in place of their World of Beer® taverns.

**Defendants Operate a Competing Business Without WOBF's Consent**

31. In or around March 2017, Matz, as CEO, formed CraftHouse, LLC, to operate competing beer and food taverns at the existing locations of Defendants' WOBF taverns. All three locations began operating as CraftHouse taverns on or about May 11, 2017.

32. Despite changing the signage at these taverns, Defendants continue to use WOBF's marks in connection with the taverns, and they continue to use WOBF's distinctive trade dress in the interior of the locations.

33. For example, Defendants' continue to use WOBF's distinctive and non-functional bar outlay while offering many of the same menu items from a similar-looking menu, all the while employing colors and design confusingly similar to WOBF's logo and marks. They have also posted information about the competing businesses on their World of Beer® Facebook pages. See Composite Exhibit K.

[1] Pursuant to Section 22.2 of the franchise agreements, WOBF will not be deemed to have waived its right to demand exact compliance with any of the terms in the franchise agreement, even if it does not exercise a right or power available to it. Further, under Section 22.13, the franchise agreements may be modified only by written agreement signed by both WOBF and the franchisee.

34. As evidenced by comments on these Facebook postings, Defendants' conduct is causing customer confusion about CraftHouse's connection to World of Beer®. See Composite Exhibit K.

35. Upon information and belief, Defendants are also causing harm to WOBF by inducing other World of Beer® franchisees to breach their franchise agreements, even offering opportunities to franchise the CraftHouse concept.

36. All conditions precedent to this action have occurred, have been satisfied, or have been waived.

**COUNT I -- INFRINGEMENT**
(as against all Defendants)

37. WOBF realleges paragraphs 1 through 36.

38. The marks and trade dress being used by Defendants are confusingly similar and in some cases identical to WOBF's marks and trade dress.

39. Defendants offer similar goods to the public and move in identical channels of trade as WOBF and duly licensed WOBF franchisees.

40. Defendants' use of WOBF's marks and trade dress is without any oral or written consent of WOBF and is likely to cause mistake or confusion in the minds of the public in violation of 15 U.S.C. § 1141(1)(a).

41. Defendants' actions are being done knowingly and intentionally to cause confusion, mistake, or to deceive.

42. Defendants have profited from their acts of infringement and WOBF has suffered damages.

43. WOBF is without adequate remedy at law because WOBF's marks and trade dress are unique and represent to the public the identity, reputation, and goodwill of WOBF and

its authorized franchisees, such that damages alone cannot adequately compensate for Defendants' misconduct.

44. Unless enjoined, Defendants and those acting in concert with them will continue to use and infringe upon WOBF's marks and trade dress. This threat of future injury to WOBF's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of WOBF's marks and trade dress and to ameliorate and mitigate the harm being caused WOBF.

**COUNT II -- UNFAIR COMPETITION**
(as against all Defendants)

45. WOBF realleges paragraphs 1 through 44 above.

46. Defendants' use of WOBF's marks along with any colorable variation thereof constitutes a passing off of the products and services of Defendants as those of WOBF in violation of 15 U.S.C. § 1125(a).

47. As a direct and proximate result of Defendants' infringement, WOBF is substantially injured in its business, including harm to the goodwill associated with its marks.

48. Defendants' actions are being done knowingly and intentionally to cause confusion, mistake, or to deceive.

49. WOBF is without adequate remedy at law because marks are unique and represent to the public the identity, reputation, and goodwill of WOBF and its authorized franchisees, such that damages alone cannot adequately compensate for Defendants' misconduct.

50. Unless enjoined, Defendants and those acting in concert with them will continue to use and infringe upon WOBF's marks. This threat of future injury to WOBF's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of WOBF's marks and to ameliorate and mitigate the harm being caused WOBF.

**COUNT III -- ENFORCEMENT OF NON-COMPETITION AGREEMENTS**
(as against MWB I, MWB II, MWB III, and Matz - injunctive relief)

51. WOBF realleges paragraphs 1 through 36 above.

52. This is an action by WOBF against Defendants, pursuant to § 542.335, Florida Statutes, for injunctive relief.

53. WOBF seeks to enforce the restrictive covenants contained in Section 20.4 of the Franchise Agreements. That provision provides that upon termination of the franchise agreements, the franchisee and its owners:

> agree that, for a period of 2 years commencing on the effective date of termination or expiration, neither [the franchisee] nor any of [its] owners will, directly or indirectly (e.g., through a spouse or child):
>
> (a) have any direct or indirect interest as a disclosed or beneficial owner in any Competitive Business located or operating in the Non-Compete Area (as defined below);
>
> (b) perform services as a director, officer, manager, employee, consultant, representative, agent or otherwise for any Competing Business located or operating in the Non Compete Area;
>
> (c) recruit or hire any person who is [WOBF's] employee or the employee of any WOB Store owned by [WOBF], [WOBF's] affiliates or [its] franchisees without obtaining the prior written permission of that person's employer; or
>
> (d) divert or attempt to divert any business or customer of WOB Stores to any Competitive Business or otherwise take any action injurious or prejudicial to the goodwill associated with the Marks and the System.

54. The Franchise Agreements define "Competitive Business" to include "any business or facility owning, operating or managing, or granting franchises or licenses to others to do so, any bar, pub, tavern or other alcoholic beverage service facility or any retail establishment (like a liquor store or convenience store) featuring beer, wine and related products as a primary menu item (other than a WOB Store operated under a franchise agreement with [WOBF])."

55. Defendants knowingly and intentionally breached their covenants not to compete set forth in their franchise agreements by operating a competitive business at the precise locations where they formerly operated their WOBF taverns.

56. The restrictive covenants are supported by a legitimate business interest, including WOBF's relationships with its prospective and existing customers, WOBF's customer goodwill and trade secrets, as well as the specialized training WOBF provides to its franchisees.

57. The restrictive covenants are reasonably necessary to protect WOBF's legitimate business interests.

58. Defendants should be enjoined for two years from engaging directly or indirectly in any competitive activity or a Competitive Business within the Non-Compete Area, as defined by the franchise agreements; recruiting or hiring any employee of a World of Beer® establishment (without prior permission); and taking any action injurious or prejudicial to the goodwill associated with the WOBF marks and System.

59. Defendants are causing and will continue to cause substantial and irreparable harm to WOBF by violating their franchise agreements.

60. The threat of injury to WOBF outweighs any harm the issuance of an injunction may inflict upon Defendants.

61. WOBF has a substantial likelihood of success on the merits of this claim against Defendants.

62. The issuance of an injunction enforcing the restrictive covenants will serve the public good, as it will, among other things, protect the investment of companies like WOBF that have developed confidential information and are entitled to protection from unfair competition from former franchisees who have violated their contractual duties.

**WHEREFORE**, Plaintiff, World of Beer Franchising, Inc., requests the following relief:

A. An Order preliminarily and permanently enjoining MWB Development I, LLC, MWB Development II, LLC, MWB Development III, LLC, CraftHouse LLC, and Evan S. Matz, their agents, servants and employees, and those people in active concert or participation with them, from:

1. Using WOBF's marks, logo, or any trade name that is confusingly similar thereto;

2. Otherwise infringing upon WOBF's marks or using any similar designation, alone or in combination with any other components;

3. Using or misappropriating WOBF's Confidential Information (as defined by Defendants' franchise agreements);

4. Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of Defendants' businesses or services;

5. Causing a likelihood of confusion or misunderstanding as to Defendants' affiliation, connection or association with WOBF and its franchisees or any of their services;

B. An Order preliminarily and permanently enjoining MWB Development I, LLC, MWB Development II, LLC, MWB Development III, LLC, and Evan S. Matz, their agents, servants and employees, and those people in active concert or participation with them, from:

1. For two years, having any direct or indirect interest or performing any service for any Competitive Business (as defined by Defendants' franchise agreements) located or operating in the Non-Compete Area (as defined by Defendants' franchise agreements);

2. Recruiting or hiring any person who is a WOBF employee or the employee of any World of Beer® establishment owned by WOBF, its affiliates, or its franchisees without obtaining the prior written permission of that person's employer; and

3. Diverting or attempting to divert any business or customer of a World of Beer® establishment to any Competitive Business or otherwise taking any

action injurious or prejudicial to the goodwill associated with WOB's marks or System.

C. An Order, pursuant to 15 U.S.C. § 1118, that all labels, signs, prints, packages, wrappers, receptacles, uniforms, logo items, check stock, and advertisements in the possession of Defendants, their affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation bearing WOBF's marks, and all plates, molds, and other means of making the same, if any, be delivered to WOBF at Defendants' cost;

D. An Order requiring Defendants to eliminate their advertising under WOBF's marks or any other confusingly similar designations from all media including, but not limited to, newspapers, flyers, coupons, promotions, signs, telephone books, telephone directory assistance listings, and mass mailings, all at Defendants' cost;

E. An Order requiring Defendants to file with the Court and to serve upon WOBF's counsel within thirty (30) days after entry of any injunction or order, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

F. An Order requiring Defendants to account and pay over to WOBF all gains, profits, and advantages derived by them as a result of their infringement of WOBF's marks to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117;

G. An award to WOBF of such damages as it has sustained by reason of Defendants' trademark infringement; and that, because of the willful nature of the infringement, the Court enter judgment for WOBF for three times the amount of the damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

H. An award to WOBF of such damages as it has sustained by reason of Defendants' unfair competition by use of WOBF's marks and tradename;

I. A decree of specific performance, directing and instructing Defendants to surrender and assign to WOBF all telephone numbers, websites, business listings, email addresses, and Post Office boxes used by or associated with Defendants' former World of Beer franchise;

J. An award to WOBF of its attorneys' fees and costs pursuant to the franchise agreements and the Lanham Act; and

K. Such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

s/ S. Douglas Knox
S. Douglas Knox
Florida Bar No. 849871
douglas.knox@quarles.com
**QUARLES & BRADY LLP**
101 East Kennedy Blvd., Ste 3400
Tampa, FL 33602-5195
Tel. 813/387-0300
Fax 813/387-1800
*Attorneys for Plaintiff*